UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEITH BILYARD,<br><br>*Plaintiff,*<br><br>*v.*<br><br>AMERICAN BANKERS INSURANCE COMPANY<br>OF FLORIDA,<br><br>*Defendant.* | Civil No. 3:20cv1059 (JBA)<br><br>September 21, 2021 |

**RULING ON MOTION TO DISMISS**

This insurance coverage dispute between Plaintiff Keith Bilyard and Defendant American Bankers Insurance Company of Florida arises from Plaintiff's insurance claim for water damage to three classic cars alleged to have occurred in June 2018. Following Defendant's denial of his claim, Plaintiff filed this action against Defendant alleging: (1) Breach of Contract (Count One); (2) Breach of the Duty of Good Faith and Faith Dealing (Count Two); (3) Connecticut Unfair Trade Practice Act violation via violations of the Connecticut Unfair Insurance Practices Act ("CUTPA/CUIPA") (Count Three); and (4) Bad Faith (Count Four). After receiving Plaintiff's Amended Complaint [Doc. # 10], Defendant filed its Motion to Dismiss [Doc. # 11] as to Counts Two, Three, and Four. Defendant's Motion does not address Plaintiff's Breach of Contract Claim.

I.     **Facts Alleged**

The facts as alleged by Plaintiff are straightforward. Plaintiff is the owner of three classic collector cars, all insured with Defendant for multiple risks, including "hail, water or flood" under a specialty classic car insurance program that Defendant markets to collectors such as Plaintiff. (Am. Compl. ¶¶ 3, 5.) The policy at issue is a "stated value" policy, setting

1

forth a specific dollar value for each of the three vehicles at issue, eliminating any controversy as to the amount of loss if a total loss occurred for any or all covered vehicles. (Pl.'s Obj. to Def.'s Mot. To Dismiss ("Pl.'s Mem.") [Doc. #12] at 1.) The aggregate stated value of the three vehicles at issue was $112,300. (*Id.*)

As a result of a severe storm on June 28, 2018, Plaintiff's property suffered damage. (Am. Compl. ¶ 5.) Among Plaintiff's losses were his cars covered under the policy, which sustained irreparable damage such that they were "totaled." (*Id.*) The policy under which Plaintiff insured the vehicles with Defendant provided full agreed value replacement cost coverage for all damage caused by "hail, water or flood" to the cars. (*Id.* ¶ 6.) Yet, Defendant has issued denials in response to Plaintiff's insurance claims for the damage to his cars. (*Id.* ¶ 7.)

Plaintiff brought the instant litigation as a result of Defendant's refusal to cover the damage under the policy. Plaintiff claims that Defendant breached its contract with him when it failed to honor its obligations to him under the insurance policy by instead issuing denials based on "alternative inapplicable exclusions." (*Id.* ¶¶ 9-13.) Next, Plaintiff alleges that Defendant breached its duty of good faith and fair dealing by "engaging in conduct designed to frustrate the Plaintiff's ability to secure the benefits due it under the contract." (*Id.* ¶ 16.) Apart from and in addition to the alleged breach of good faith and fair dealing, Plaintiff alleges that Defendant also acted in bad faith by unjustifiably delaying and refusing to negotiate the claim and asserting false bases for rejecting Plaintiff's claims. (*Id.* ¶¶ 25, 27.) Finally, Plaintiff alleges that Defendant violated CUTPA through its violation of CUIPA by making a series of material misrepresentations and deceptive acts that led Plaintiff to sustain significant monetary damages. (*Id.* ¶¶ 21-23.)

## II.    Legal Standard[1]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must be interpreted liberally, all allegations must be accepted as true, and all inferences must be made in the plaintiff's favor. *Heller v. Consolidated Rail Corp.*, 331 F. App'x. 766, 767 (2d Cir. 2009) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). Motions to dismiss "assess the legal feasibility of the complaint" and are "not the appropriate place to weigh the likelihood of success on the merits of a claim." *In re Walnut Hill, Inc.*, No. 16-20960 (JJT), 2019 WL 2092383, at *3 (Bankr. D. Conn. May 10, 2019) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)). But a complaint that only "offers 'labels and conclusions'" or "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Rather, a complaint must plead factual allegations that "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must be "plausible on its face," *id.* at 570.

## III.    Discussion

### A.  Violation of CUTPA via CUIPA

The Connecticut Unfair Trade Practices Act prohibits persons from "engag[ing] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b. CUTPA claims are analyzed under three

---

[1] As Defendant points out, Plaintiff asks the Court to apply the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court, however, evaluates Plaintiff's Amended Complaint under the "plausibility" standard set by the standard set by the Supreme Court to replace the "no set of facts" test in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

criteria, although all three are not necessary for a viable claim: (1) "[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise," (2) "whether it is immoral, unethical, oppressive, or unscrupulous," or (3) "whether it causes substantial injury to consumers, [competitors or other businesspersons]." *Edmands v. Cuno, Inc.*, 277 Conn. 425, 450 n.16 (2006).

 Not all conduct falls within CUTPA. *Muniz v. Kravis*, 59 Conn. App. 704, 715 (2000); *see also Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 617 (1981) (discussing the comprehensive remedies available for a violation of CUTPA). An intentional breach of contract does not always give rise to a CUTPA claim. *Boulevard Assocs. v. Sovereign Hotels*, Inc., 72 F.3d 1029, 1038-39 (2d Cir. 1995) (noting that "the vast majority of courts in Connecticut" find that a "simple contract breach is not sufficient to establish a violation of CUTPA." (quoting *Chaspek Mfg. Corp. v. Tandet*, No. CV 9309-2714, 1995 WL 447948, at *12 (Conn. Super. Ct. June 16, 1995))). Rather, for a contract dispute to form a CUTPA claim, the plaintiff must allege proof of "substantial aggravating circumstances." *See, e.g.*, *Tucker v. Am. Int'l Group*, 179 F. Supp. 3d 224, 237 n.24 (D. Conn. 2016) ("Until the Connecticut Supreme Court states otherwise, the focus of a CUIPA/CUTPA claim is on the alleged conduct of the insurer and not the actual terms of the contract, or the plaintiff's ability to recover under it.") (internal quotations and citations omitted).

It is well settled that violations of CUIPA may be alleged as a basis of a CUTPA cause of action. *See Pettengill v. Fireman's Funds Ins., Co.*, No. 3:13cv154 (WWE), 2013 WL 4054635 (D. Conn. Aug. 12, 2013); *Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 625 (2006). CUIPA prohibits unfair claim settlement practices committed with frequency as to indicate a general business practice such as:

> (A) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (B) failing to acknowledge and act with reasonable

4

> promptness upon communications with respect to claims arising under insurance policies; (C) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (D) refusing to pay claims without conducting a reasonable investigation based upon all available information; . . . (F) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (G) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; [and] (N) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement . . . .

Conn. Gen. Stat. § 38a-816(6). To prevail on a CUIPA claim, a plaintiff must present "enough facts to permit [] the reasonable inference that the unfair insurance practice occurred with enough frequency for it to be deemed a general business practice." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15CV00879(VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015). If a plaintiff brings a claim pursuant to CUIPA alleging an unfair insurance practice, and the plaintiff further claims that the CUIPA violation constituted a CUTPA violation, the failure of the CUIPA claim is fatal to the CUTPA claim. *State v. Acordia, Inc.*, 310 Conn. 1, 31 (2013).

Here, Plaintiff asserts seven separate violations of CUIPA, all of which pertain to unfair settlement practices: Conn. Gen. Stat. §§ 38a-816(6)(A)-(D), (F), (G), (N). But Plaintiff's Amended Complaint does not allege specific conduct Defendant engaged in corresponding with each violation. Instead, Plaintiff lists the prohibited settlement practices found in the CUIPA statute and alleges that, in addition to breaching the contract by refusing to pay Plaintiff what is owed to him, Defendant's actions "constituted a series of deceptive acts and practices within the meaning of [CUTPA] in the conduct of the trade or business of insurance, in that said conduct constituted a series of material misrepresentations or omission likely to mislead a consumer such as the Plaintiffs acting reasonably under the circumstances." (Am. Compl. ¶ 21.)

5

Plaintiff's allegations of a business practice are grounded in two other lawsuits in which plaintiffs sued Defendant for compelling them to institute those lawsuits to recover what was owed to them on their respective policies because Defendant refused to properly investigate the claims. (Am. Compl. ¶¶ 20; Pl.'s Mem. at 7 (citing *Bonner v. Leon*, 2:13-cv-01858-APG-VCF, and *Krivitsky v. Am. Bankers Ins. Co.*, 2:14-cv-01142-GAF-JEM).) In these other lawsuits and in the instant action the plaintiffs alleged that Defendant refused to honor their insurance claims on vehicles whose full values were diminished. (Am. Compl. ¶¶ 20-21.) Where Plaintiff relies on other lawsuits in which those plaintiffs alleged similar conduct as Plaintiff alleges here, the Court may draw an inference that Defendant engaged in that conduct with the frequency necessary for a "business practice" under CUIPA. *See Cark v. Amica Mutual Ins. Co.*, No. 3:16cv1573 (JBA), 2018 WL 2725441, *3 (D. Conn. June 6, 2018) ("Plaintiff must only allege that Defendant's conduct occurs with sufficient frequency to constitute a 'general business practice,' which is accomplished here by referencing other cases where insureds were similarly denied coverage . . . .") Plaintiff need not allege more than that, as proving that Defendant's conduct is a business practice is "a proper area for discovery." *Guillory*, 476 F. Supp. 2d at 176.

But the Amended Complaint falters with respect to its allegations that Defendant subjected *Plaintiff* to these alleged business practices. Plaintiff re-alleges the facts underlying his breach of contract claim—that Defendant refused to adequately review, investigate, or appraise his loss before denying his claim—but provides few additional details as to the CUTPA/CUIPA claim. For example, Plaintiff alleges that Defendant has refused to pay Plaintiff the amounts due to him under the policy and refused to abide by the provisions of the insurance contract to resolve disagreements without the expense of litigation, in violation of Connecticut General Statute § 38a-816(6)(G). (Am. Compl. ¶ 14.) But those allegations are simply a rephrasing of the statutory language. *See* § 38a-816(6)(G) (prohibiting "compelling

insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"). And when Plaintiff alleges that Defendant "failed to implement or follow accepted standards for the investigation and payment of the Plaintiff's claims," (Am. Compl. ¶ 16(a)), he only rephrases the statute once again, *see* § 38a-816(6)(C) (prohibiting "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies").

Finally, Plaintiff's argument that Defendant "interpreted policy language in an unduly and unjustifiably restrictive manner as to manufacture knowingly unfounded bases for denial of Plaintiff's claim," (Am. Compl. ¶ 16(f)), is not supported by any further reference to the alleged "policy language" or what interpretation Defendant offered. Nor does Plaintiff refer to communications wherein Defendant engaged in the alleged conduct beyond the generalized assertions. Without additional factual allegations, this claim is yet again a mere rephrasing of the statutory language. *See* § 38a-816(6)(A) (prohibiting "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"). The Amended Complaint repeats this pattern throughout Count Three.

Plaintiff is obligated to offer "something more than mere conclusions and the formulaic recitation of the elements of a CUTPA cause of action." *Gaynor v. Hi-Tech Homes*, 149 Conn. App. 267, 277 n.10 (2014). Without more factual context in addition to Plaintiff's legal conclusions that Defendant's breaching conduct rises to the level of the practices prohibited by CUTPA and CUIPA, the Court need not accept the validity of those conclusions. *Iqbal*, 556 U.S. at 686–87 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.")

In sum, Plaintiff's CUIPA claim must allege not only that Defendants engaged in a business practice of prohibited conduct as defined by the statute but also that Defendant

subjected him to that conduct. Although Plaintiff may have alleged facts sufficient for a plausible inference that Defendant subjected others to prohibited conduct, Plaintiff has not alleged enough facts supporting his claim that Defendant subjected *him* to conduct unlawful under CUIPA. Instead, he has largely offered conclusions and reiterations of the statutory language of CUIPA. But labels, conclusions, "naked assertions devoid of further factual enhancement," and "[t]hreadbare recitals of the elements of a cause of action" are not afforded the same presumption of truth as well-pleaded factual allegations and are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

To be sure, it cannot be said that "no set of facts" support his claim of relief, as Plaintiff argues. (Pl.'s Mem. at 5.) But Plaintiff does not provide facts requisite to "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, the Court grants Defendant's motion to dismiss as to Plaintiff's CUTPA/CUIPA claim.

### B.  Breach of Covenant of Good Faith and Fair Dealing and Bad Faith

Defendant asks the Court to consider two alternatives with respect to Plaintiff's breach of the covenant of good faith and fair dealing claim (Count Two) and bad faith claim (Count Four). First, Defendant argues that neither claim has been pled with the adequacy required to survive a motion to dismiss and instead they merely use the "watchwords of bad faith." (Def.'s Mem. at 7.) Defendant maintains that both claims should be dismissed accordingly. Alternatively, Defendant argues that Count Two should be stricken pursuant to Rule 12(f) because it is incorporated in Count Four and thus pleads nothing additional to the allegations in Count Four. Plaintiff responds by arguing that Defendant "mischaracterizes" Counts Two and Four. (Pl.'s Mem. at 3.) Plaintiff argues that paragraphs 16 and 22-25 of the Amended Complaint provide sufficient facts to allege both a breach of the covenant of good faith and fair dealing and bad faith. (*Id.*) With respect to Defendant's argument that the good faith and fair dealing claim should be stricken, Plaintiff argues that the covenant of good faith

and fair dealing claim arises out of contract law and the bad faith claim is a tort claim and that Defendant offers no authority stating that the two claims cannot coexist. (Pl.'s Mem. at 6.) The Court considers each of Defendant's arguments separately.

>    i.    *Motion to Dismiss Both Claims*[2]

Under Connecticut law, "the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004). A breach of the implied covenant of good faith and fair dealing necessarily includes bad faith conduct. *Mazzarella v. Amica Mutual Ins. Co.,* 774 F. App'x 14, 17 (2d Cir. 2019) (citing *De La Concha*, 269 Conn. at 434) (noting that in a breach of the implied covenant of good faith and fair dealing, "the acts by which a defendant allegedly impedes the rights of a plaintiff to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith."). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by

---

[2] Plaintiff alleges both that Defendant breached the implied covenant of good faith and fair dealing and that Defendant acted bad faith regarding Plaintiff's claim under the policy. Both counts contain similar allegations. For example, Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing by "knowingly and intentionally" frustrating his "ability secure the benefits due" by failing to implement accepted standards for investigation, delaying or refusing payment, and interpreting policy language "in an unduly and unjustifiably restrictive manner." (Am. Compl. ¶¶ 15-16.) And Plaintiff alleges Defendant acted in bad faith by embarking "on a campaign to undervalue and delay resolution of Plaintiff's claim in an effort to create financial pressure on plaintiff to accept far less than the fair value of his claims" and "knowingly and intentionally falsely denied his claims, forcing him to litigate, all with the conscious purpose of depriving him of the value of his claim as afforded by the policy." (*Id.* ¶¶ 24, 27.) Because the allegations in both counts follow each other so closely, the Court applies the same standard to each claim for the purposes of a motion to dismiss. *See Arch Ins. Co. v. Centerplan Constr. Co.*, No. 3:16-CV-01891 (VLB), 2018 WL 6519063, at *17 (D. Conn. Dec. 11, 2018) (holding that the bad faith claim fails for the same reason the implied covenant claim fails because no legal or factual basis differentiated the two).

an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . ." *Habetz v. Condon*, 224 Conn. 231, 237-38 (1992). In short, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." *Id.* at 237.

While Connecticut law defines the elements of a cause of action for bad faith, federal law governs the degree of particularity with which such an allegation must be pled in a federal complaint. *See Stern v. General Electric Co.*, 924 F.2d 472, 476, n.6 (2d Cir. 1991). Accordingly, "[i]n order to survive a motion to dismiss on such a claim, a plaintiff must allege the requisite state of mind." *Singer v. Priceline Group, Inc.*, No. 15-cv-1090 (VAB), 2016 WL 3976539, at *6 (D. Conn. July 22, 2016). That is, Plaintiff must allege that Defendant acted with a dishonest purpose or sinister motive, not merely that a coverage dispute existed. *Mazzarella*, 774 F. App'x at 17; *Calzone v. State Farm Casualty Co.*, No. 3:17-cv-00518 (MPS), 2017 WL 5013234, at *1 (D. Conn. Nov. 2, 2017).

Supporting his claims of bad faith and breach of the covenant of good faith and fair dealing, Plaintiff alleges that Defendant "interpretated policy language" in an unjustifiable manner in an effort to "manufacture knowingly unfounded bases for denial." (Am. Compl. ¶¶ 16(f), 25, 27.) The Amended Complaint continues: "Upon learning of the magnitude of the damage to Plaintiff's property, Defendants embarked on a campaign to undervalue and delay resolution of Plaintiff's claim in an effort to create financial pressure on plaintiff to accept far less than the fair value of his claims." (*Id.* ¶ 24.) Accepting these allegations as true, they do raise an inference that Defendant acted with a dishonest purpose or sinister motive without the need for additional facts supporting his claim at this stage. *See Mazzarella*, 774 F. App'x at 17.

Defendant relies on *Calzone v. State Farm Fire & Cas. Co.*, to argue that Plaintiff's bad faith claims go no further than to recite the "watchwords of bad faith." No. 3:17-cv-518-MPS, 2017 WL 5013234, at *2 (D. Conn. Nov. 2, 2017). But in *Calzone*, the plaintiff alleged only that

10

State Farm "refused to pay the sum due to [plaintiff] for the loss sustained" and failed to "adequately review, investigate and appraise the loss related to the claim." *Id.* at *1. On the contrary, not only does the Amended Complaint claim that Defendant refused to honor its obligations under the policy and conducted an inadequate investigation, (Am. Compl. ¶¶ 14, 16(a)), but it further amplifies those facts with claims that after Defendant realized the "magnitude of the damage to Plaintiff's property[,]" it created fictitious grounds for denial. (*Id.* ¶¶ 24-26.) In view of these specific allegations, the Court concludes that Plaintiff has stated a plausible claim of bad faith and/or the breach of the implied covenant of good faith and fair dealing. Defendant's motion to dismiss Counts Two and Four for failure to state a claim is denied.

      ii.    *Motion to Strike Covenant of Good Faith and Fair Dealing Claim as Redundant*

Federal Rule of Civil Procedure 12(f) allows a court to strike "from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, when deciding a Rule 12(f) motion "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Forschner Group, Inc. v. B-line A.G.*, 943 F. Supp. 287, 291 (S.D.N.Y. 1996) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)); *see also Ulla-Maija, Inc. v. Kivimaki*, No. 02 Civ. 3640(AGS), 2003 WL 169777, at *4 (S.D.N.Y. 2003) (motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation"). The motion to strike standard is the "mirror image" of the standard for a 12(b)(6) motion to dismiss for failure to state a claim. *See Sony Fin. Servs., LLC v. Multi Video Group, Ltd.*, No. 03Civ.1730(LAK)(GWG), 2003 WL 22928602, at *8 (S.D.N.Y. Dec. 12, 2003).

Connecticut law recognizes an independent cause of action arising from an insurer's common law duty to act in good faith arising in tort. *Buckman v. People Exp., Inc.*, 205 Conn. 166, 170 (1987). This implied duty is "a supplement to the express contractual covenants, to

prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 799-800 (2013) (internal citation and quotations omitted). It allows a plaintiff to claim damages beyond the traditional remedies under contract law or those pursuant to a statute for conduct that goes beyond a simple breach of contractual terms. *See Buckman*, 205 Conn. at 172.

When a plaintiff's claim of tortious bad faith conduct exclusively arises from the same facts underlying a breach of the implied covenant of good faith and fair dealing allegation, the claims receive the same analysis. *See Capstone Bldg. Corp.*, 308 Conn. at 794 n.34 ("This court has tended to use the terms 'bad faith,' 'lack of good faith' and 'breach of the covenant of good faith and fair dealing' interchangeably . . . and applies the same analysis to claims brought under each of these terms."); *see also Nationwide Mut. Ins. Co. v. Pasiak*, No. Xo8FSTCV094015401, 2011 WL 6413817, *3 (Conn. Super. Ct. Nov. 30, 2011) (finding that "[a] cause of action labeled as 'breach of the implied covenant of good faith and fair dealing' is the same cause of action as one labeled 'tortious bad faith,'" when the basis for each claim is a contractual relationship). Indeed, Connecticut courts maintain a practice of using the terms interchangeably. *See, e.g.*, *PSE Consulting, Inc. v. Frank Mercede and Sons, Inc.*, 267 Conn. 279 (2004); *Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523, 564 (1999); *Multi–Service Contractors, Inc. v. Vernon*, 193 Conn. 446, 452 (1984).

Here, Plaintiff's allegations of bad faith and breach of the implied covenant of good faith and fair dealing both stem from a series of actions Plaintiff contends Defendant took with respect to its insurance policy. (*See* Am. Compl. ¶¶ 14-16, 24-27.) In other words, Count Two and Four are based on the same facts. Although Plaintiff has alleged a breach of the implied covenant of good faith and fair dealing and bad faith in two separate counts, it is "not the label . . . placed on each count of [the] complaint that is pivotal but the nature of the legal

inquiry." *Votre v. Cty. Obstetrics & Gynecology Grp., P.C.*, 113 Conn. App. 569, 580 (App. Ct. 2009), *cert. denied*, 292 Conn. 911. Given that Plaintiff offers no legal or factual basis to distinguish his claim of a breach of the implied covenant of good faith and fair dealing from his bad faith claim, the legal inquiry also is the same. *See, e.g.*, *Arch Ins. Co.*, 2018 WL 6519063, at *17 (holding that the plaintiff's bad faith claim failed for the same reason the covenant of good faith and fair dealing claim failed because no legal or factual basis differentiated the two).

Therefore, because Count Four incorporates Count Two and alleges facts in addition to Count Two, (*see* Am. Compl. ¶¶ 24-27), the Court grants Defendant's motion to strike Count Two as redundant.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion with respect to Claims Two (Breach of Implied Covenant) and Three (CUTPA/CUIPA), and DENIES Defendant's motion with respect to Count Four (Bad Faith).

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of September 2021